UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
TULUN KORKMAZ,

                                          Plaintiff,

    -against-

J & R TRAVEL AND ACCOUNTING CORP. and
JAMAL ALOKASHEH, individually,

                                          Defendants.
-----------------------------------------------------------------------X

For Online Publication Only

**ORDER/REPORT AND
RECOMMENDATION**

11–CV–6241 (JBW) (JMA)

A P P E A R A N C E S:

Joseph M. Labuda
Adam C. Weiss
Milman Labuda Law Group, PLLC
3000 Marcus Avenue, Suite 3W3
Lake Success, NY 11042
    *Attorneys for Defendants*

**AZRACK**, **United States Magistrate Judge:**

      Currently before the Court is a motion filed by the Milman Labuda Law Group, PLLC ("MLLG") to withdraw as counsel for J & R Travel and Accounting Corporation ("J & R") and Jamal Alokasheh (together "defendants") and for an order awarding attorneys' fees totaling $10,612.44, pursuant to Federal Rule of Civil Procedure 54(d)(2) and Local Rule 1.4.

      For the reasons set forth below, the Court grants MLLG's motion to withdraw and recommends the Honorable Jack B. Weinstein enter an attorneys' fees judgment against defendants, jointly and severally, in the amount of $8,489.96.

## BACKGROUND

On December 22, 2011, plaintiff Tulun Korkmaz, a former employee of J & R, filed this action against defendants alleging sexual harassment and gender-based discrimination. Compl. ¶ 1, ECF No. 1. Alokasheh owns and operates J & R. Id. ¶ 4.

Defendants retained MLLG. Affirm. of Joseph M. Labuda in Supp. Mot. to Withdraw as Counsel ("Labuda Affirm.") ¶ 2, ECF No. 22. MLLG and defendants entered into a retainer agreement (the "Agreement"), which Alokasheh signed individually and on behalf of J & R. Id.[1] The Agreement contains the following relevant terms: (1) defendants retained MLLG at an hourly rate of $400 for partners and $200 to $325 for associates; (2) an initial deposit of $5,000 was due upon execution of the agreement; (3) MLLG was to remit monthly bills showing records of the annual retainer and all hourly work performed each month, which would "become due and payable no later than the 15th of each month"; and (4) fees and costs remaining unpaid for thirty days would be subject to interest payments of .75% per month. Additionally, in the margin of the Agreement are handwritten notes and the initials "JL." The notes read as follows: "$1,000. $1,000 by February 16, 2012. $500 each week thereafter until $5,000 is paid."

Between February and December 2012, counsel for the parties: (1) participated in an initial conference before the Court; (2) entered into two stipulations, one extending defendants' time to answer and another to withdraw the first and second causes of action; (3) conducted fact discovery, including exchanges of Rule 26 disclosures, document requests, interrogatories, and responses; and (4) participated in two teleconferences with the Court regarding discovery. See April 5, 2012, Minute Entry, ECF No. 14; June 4, 2012 Minute Entry, ECF No. 15; Oct. 31, 2012 Minute Entry, ECF No. 19; Stip. Extending Time to Answer, ECF No. 8; Stip.

---

[1] To preserve confidentiality, MLLG submitted the Agreement, itemized billing records, and copies of email correspondence with Alokasheh for in camera review. From these documents, the Court has only included facts that do not threaten confidentiality or the attorney-client privilege.

Withdrawing First and Second Causes of Action, ECF No. 10. Alokasheh was traveling abroad between July and September 2012. See March 26, 2013 Hr'g Tr. ("Mar. 26 Tr.") 7:16–20, ECF No. 29.

On December 12, 2012, MLLG filed the instant motion. Notice of Mot., ECF No. 20. In short, MLLG asserts that defendants stopped paying their legal fees and, therefore, MLLG should be relieved as counsel and awarded the outstanding legal fees owed by defendants. Labuda Affirm. ¶¶ 4, 7, 10. Although Labuda asserts in his affirmation that Alokasheh stopped making payments in March, the billing records reflect that Alokasheh made his last payment on June 19, 2012. See Labuda Affirm. ¶ 4. In total, Alokasheh paid MLLG $6,727.50. See Mar. 26 Tr. 4:17–19. MLLG now seeks $10,612.44 in outstanding fees, which does not include the interest on unpaid fees that is recoverable under the Agreement. See MLLG Mem. of L. ("MLLG Mem.") at 2, ECF No. 21. Although MLLG served defendants with this motion, defendants did not respond. Aff. of Service, ECF No. 23. On January 17, 2013, Judge Weinstein referred MLLG's motion to me for decision. ECF No. 24.

On February 6, 2013, I held a status conference with an MLLG partner, Joseph M. Labuda, and Alokasheh to address MLLG's motion. Feb. 6, 2013 Minute Entry, ECF No. 25. During this conference, Alokasheh raised questions about the Agreement, contending that Adam C. Weiss, an associate at MLLG, told Alokasheh that MLLG would represent him for $5,000 total. See Feb. 6, 2013 Conference Tr. ("Feb. 6 Tr.") 2:19–24, 5:13–15, ECF No. 26. As a result, I directed MLLG to submit the Agreement and related billing records. Feb. 6, 2013 Minute Entry.

Subsequently, on March 26, 2013, Alokasheh and attorneys Labuda and Weiss appeared before me for a hearing on MLLG's motion. Mar. 26, 2013 Minute Entry, ECF No. 28. At the conclusion of the hearing, I reserved decision on the motion.

## DISCUSSION

*1. Motion to Withdraw*

"[I]t is well-settled in the Eastern and Southern Districts of New York that non-payment of legal fees is a valid basis for granting a motion to withdraw pursuant to Local Civil Rule 1.4." Melnick v. Press, No. 06–CV–6686, 2009 WL 2824586, at *3 (E.D.N.Y. Aug. 28, 2009); see, e.g., Clover v. Shiva Realty of Mulberry, Inc., No. 10–CV–1702, 2011 WL 4530536, at *2 (S.D.N.Y. Sept. 30, 2011) (allowing MLLG to withdraw as counsel where clients failed to pay legal fees). Here, it is undisputed that Alokasheh stopped paying MLLG's legal fees. See Mar. 26 Tr. 3:10–5:9; Labuda Affirm. ¶ 4. Accordingly, MLLG's motion to withdraw as counsel for defendants is granted.

As a corporate defendant, J & R may not appear on its own behalf. See Rowland v. California Men's Colony, 506 U.S. 194, 202–03 (1993) (collecting cases); Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991) ("[W]e have long required corporations to appear through special agent, the licensed attorney."). As a result, J & R shall retain new counsel, and said counsel shall file a notice of appearance by June 21, 2013. If J & R fails to retain counsel by this date, the Court will permit plaintiff to seek a default judgment against J & R. In the event that individual defendant Alokasheh is unable to retain new counsel, he must appear at any subsequent conferences pro se.

## 2. Application for Attorneys' Fees

### a. Jurisdiction

MLLG moves for an order awarding attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2), which authorizes a party to make "[a] claim for attorney's fees and related nontaxable expenses . . . by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). Such a motion must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2)(B)(ii).

Rule 54(d)(2), however, is inapposite to the pending fee motion—an inexcusable mistake by MLLG given Magistrate Judge Roanne L. Mann's recent report and recommendation on a nearly identical motion by MLLG in another case. Idrovo v. Mission Design and Mgmt. Inc., No. 10–CV–4188, 2012 WL 6755273, at *1–2 (E.D.N.Y. Nov. 28, 2012) (report and recommendation), adopted by 2013 WL 29925 (E.D.N.Y. Jan. 2, 2013). As discussed in Idrovo, Rule 54(d)(2) does not apply where a judgment has not been entered and "where the grounds for a fee recovery stem from an alleged breach of a retainer agreement, as those fees would have to be proven 'at trial as an element of damages.'" Id. at * 2 (citing Fed. R. Civ. P. 54(d)(2)(A)).

Nevertheless, the Court may, pursuant to 28 U.S.C. § 1367, exercise supplemental jurisdiction to hear the parties' fee dispute, which is in essence a state law breach of contract claim. Idrovo, 2012 WL 6755273, at *2 (exercising supplemental jurisdiction over MLLG's motion for attorneys' fees and treating it as state law breach of contract claim). The Second Circuit supports the "exercise of supplemental jurisdiction to hear fee disputes between litigants and their attorneys when the dispute relates to the main action." Alderman v. Pan Am World Airways, 169 F.3d 99, 102 (2d Cir. 1999); see Cluett, Peabody & Co. v. CPC Acquisition Co.,

863 F.2d 251, 256 (2d Cir. 1988) (finding district court properly exercised supplemental jurisdiction over attorney-client fee dispute where district court had familiarity with amount and quality of legal work and had responsibility to protect its own officers in such matters). Here, prior to the instant motion, MLLG participated in one in-person conference and two telephone conferences before me, made two letter motions, and filed two stipulations with opposing counsel. As a result, the Court has some familiarity with MLLG's performance and their participation in this matter. Therefore, the Court will exercise supplemental jurisdiction over MLLG's claim for attorneys' fees.

   *b. Grounds for Recovery*

Under New York law, to recover fees based on a breach of contract, an attorney must show: (1) the existence of an agreement; (2) adequate performance by the attorney; (3) breach of the contract by defendants; and (4) damages. Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996); see, e.g., Clover, 2011 WL 4530536, at *3 (awarding MLLG outstanding legal fees under breach of contract theory against clients who signed retainer agreement). Further, in New York, "contracts between attorneys and clients are of special interest and concern to the courts." Carey v. Mui-Hin Lau, 140 F. Supp. 2d 291, 296 (S.D.N.Y. 2001) (citing Cohen v. Ryan, 311 N.Y.S.2d 644, 645 (N.Y. App. Div. 2d Dep't 1970)). In turn, the attorney bears the burden of establishing that the arrangement for compensation was fair, reasonable and fully comprehended by the client. Mar Oil, S.A. v. Morrissey, 982 F.2d 830, 838 (2d Cir. 1993); see also Cohen, 311 N.Y.S.2d at 645. However, "under New York law, a private retainer agreement is viewed as presumptively fair in the absence of fraud, deceit, overreaching, or undue influence." Carey, 140 F. Supp. 2d at 296 (quoting Uy v. Bronx Municipal Hosp. Ctr., 182 F.3d 152, 155 (2d Cir. 1999)) (internal quotation marks omitted).

In the absence of a retainer agreement, or if the terms of a retainer agreement are not established, New York law allows an attorney to recover attorneys' fees "in quantum meruit to the extent that the fair and reasonable value of the legal services can be established." Seth Rubenstein, P.C. v. Ganea, 833 N.Y.S.2d 566, 570 (N.Y. App. Div. 2 Dep't 2007) (collecting cases); Brooks v. Cohen, Jayson & Foster, P.A., No. 08–CV–4462, 2010 WL 3528919, at *3 (S.D.N.Y. Aug. 26 2010) ("To the extent that the fair and reasonable value of legal services can be established, the absence of a retainer agreement will not prevent a law firm from recovering in quantum meruit."). To recover in quantum meruit, the attorney must show: (1) performance of the services in good faith; (2) acceptance of the services by the person to whom they are rendered; and (3) an expectation of compensation therefor. Carey, 140 F. Supp. 2d at 297 (LeBoeuf, Lamb, Greene, & MacRae, LLP v. Worsham, 185 F.3d 61, 66 (2d Cir. 1999)); see, e.g., Clover, 2011 WL 4530536, at *3 (awarding MLLG outstanding legal fees under quantum meruit theory against client who did not sign retainer agreement); cf. Ocean World Lines, Inc. v. Atlant (USA) Inc., No. 06–CV–6259, 2008 WL 1776415, at *2 (S.D.N.Y. Apr. 17, 2008) (report and recommendation) (allowing attorney to recover fees, under theory of quantum meruit, from client who signed retainer agreement but failed to pay fees), adopted by Order, No. 06–CV–6259 (S.D.N.Y. May 9, 2008).

Here, MLLG can recover an award for attorneys' fees based on defendants' breach of the Agreement. MLLG and defendants entered into the Agreement, MLLG performed legal services for defendants, and defendants failed to pay MLLG's fees as required under the Agreement, thereby causing damages to MLLG. Alokasheh maintains that he and J & R had a fee arrangement with MLLG different from the one set forth in the Agreement and that he did not know what he was signing when he signed the Agreement. Feb. 6 Tr. 2:20–22; March 26 Tr.

7

3:18–23, 12:12–14. However, these contentions are not credible given that Alokasheh paid MLLG beyond the $5,000 that he now maintains was their agreed-upon fee. See Mar. 26 Tr. 4:17–19. Moreover, Alokasheh is a business owner with enough sophistication to understand the straightforward terms of the Agreement, which he signed individually and on behalf of J & R. Overall, the facts do not reflect a case of fraud, deceit, overreaching, or undue influence, nor do they demonstrate a lack of comprehension by Alokasheh. Accordingly, MLLG can recover the outstanding attorneys' fees based on defendants' breach of the Agreement.

Further, even if Alokasheh's allegations did invalidate the Agreement, MLLG could still recover the reasonable value of its services under a theory of quantum meruit. MLLG performed services for defendants in good faith, defendants accepted the services, and MLLG expected compensation therefor based on the Agreement and discussions with Alokasheh.

  *c. Reasonableness*

In New York, "it is within the traditional authority of the courts to supervise the charging of fees for legal services to reflect the quantity and quality of services rendered." Cutner & Assocs., P.C. v. Kanbar, No. 97–CV–1902, 1998 WL 104612, at *3 (S.D.N.Y. Feb. 4, 1998) (citing Malamut v. Sassower, 567 N.Y.S.2d 499, 501 (N.Y. App. Div. 2d Dep't 1991)). "Any award of attorney's fees, whether awarded pursuant to statute or contract, must be reasonable." Id.

In making a determination on reasonableness, courts have "broad discretion" and are not bound by an attorney's summary of the time spent. See Ocean World, 2008 WL 1776415, at *2 (collecting cases). Courts consider the following factors: "the extent to which the hours reflect inefficiency or duplicative work; legal work versus non-legal work, investigations, and other work performed by non-lawyers; time spent in court differentiated from out-of-court efforts; and

the court's own knowledge, experience and expertise as to the time required to complete a similar task." Rahmey v. Blum, 466 N.Y.S.2d 350, 356–57 (N.Y. App. Div. 2d Dep't 1983). If warranted, a court can make an upward or downward adjustment of the final award based on the unique characteristics of the case. Daimlerchrysler Corp. v. Karman, 782 N.Y.S.2d 343, 345, 347–48 (N.Y. Sup. Ct. 2004) (citing Rahmey, 466 N.Y.S.2d at 357–58); see also Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) ("A court has discretion to make across-the-board percentage reductions to exclude unreasonable hours.").

The Agreement and the hourly rates set forth therein are reasonable and in accord with rates typically awarded in New York. See, e.g., Clover, 2011 WL 4530536, at *3 (finding hourly rates of $425 for MLLG partners and $275-$300 for MLLG associates reasonable and typical for New York). Furthermore, defendants have not raised any arguments concerning MLLG's hourly rates. Accordingly, the Court will calculate MLLG's fees at an hourly rate of $400 for partner Labuda and $325 for associate Weiss.

Alokasheh, however, contests the amount of time MLLG billed, calling it "bogus billing" and alleging that MLLG canceled appointments with him, charged him for research without explaining it to him, and overall "did not really do anything for [him]." Mar. 26 Tr. 4:14–17, 5:1–4, 5:14–15. MLLG, which billed defendants for sixty hours, maintains that this time was "not unreasonable" for the work performed, id. at 6:2–3, which mainly involved "investigating factual allegations of the complaint, preparing and filing the answer, [participating in] extensive settlement negotiations, [conducting] discovery, [performing] deposition preparation work, and [attending] court appearances[,]" Labuda Affirm. ¶ 3.

Despite Alokasheh's complaints, it is clear from the docket that MLLG has sufficiently defended this action thus far. However, upon review of MLLG's billing records, I have found

9

several excessive and unnecessary time entries and that, generally, the hours billed by MLLG appear to be disproportionate to the work performed. For example, while there has not yet been a single deposition, Weiss billed approximately sixteen hours for time spent drafting, editing, and reviewing a deposition outline. Also, on one occasion, Weiss billed 1.7 hours for "[p]repar[ing] for and attend[ing] teleconference with court; email update to client[,]" where the conference was a mere fifteen minutes and Weiss had spent thirty minutes the day before also preparing for the conference. See, e.g., E.S. and M.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 432 (S.D.N.Y. 2011) (finding billing one hour for twelve minute teleconference with court to be excessive even after including preparation time).

Further, MLLG also engaged in block-billing by combining several tasks into a single entry, which, although not forbidden, makes a determination of reasonableness "difficult if not impossible." Id. For example, Weiss billed 3.4 hours on the following task: "Email with client and opposing counsel re: settlement demand; drafting rule 26 disclosures, interrogatories and document requests." See, e.g. id. at 432–33 (finding similar time entries made it difficult for court to assess reasonableness).

Accordingly, based on my knowledge and familiarity with the underlying action, I find that MLLG's billing was excessive, unnecessary and vague, and therefore warrants a twenty percent reduction in fees.[2] See, e.g., Daimlerchrysler Corp., 782 N.Y.S.2d at 348 (reducing final award by ten percent after finding certain time entries secretarial in nature, excessive, or performed for discontinued action); Matter of Spingarn, 626 N.Y.S. 2d 650, 654 (N.Y. Sup. Ct.

---

[2] Defendants have already paid MLLG $6,727.50, and the billing records include unexplained discounts and "write offs." As a result, rather than parceling out which hours defendants have already paid for and reducing the number of remaining hours, I find in my discretion that the better and more expedient solution is to reduce the final award sought by MLLG. See Daimlerchrysler Corp., 782 N.Y.S.2d at 348 (reducing total award rather than hours in interest of efficiency); Gatti v. Community Action Agency of Greene County, Inc., 263 F. Supp. 2d 496, 519 (N.D.N.Y. 2003) (same). I also note that a reduction of this nature benefits MLLG because a line-by-line reduction in time would likely warrant a greater reduction in fees.

1995) (reducing attorneys' fees for unnecessary and duplicative billing based on court's experience and analysis of time reasonably involved in such case); Flores v. J & B Clubhouse Tavern, Inc., No. 10–CV–4332, 2012 WL 4891888, at *6–7 (S.D.N.Y. Oct. 16, 2012) (reducing one attorney's fees by forty percent and two attorneys' fees by twenty-five percent where billing entries were unnecessary and excessive); Harris v. Fairweather, No. 11–CV–2152, 2012 WL 3956801, at *8 (S.D.N.Y. Sept. 10, 2012) (report and recommendation) (reducing fees by twenty percent for mediocre attorney performance, vague billing entries, and excessive time spent on certain tasks), adopted by 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012).

The Court finds MLLG is entitled to attorneys' fees in the amount of $8,489.96.[3] Pursuant to 28 U.S.C. § 636, I cannot enter a judgment without the consent of both parties. See 28 U.S.C. § 636(c)(1). Accordingly, I recommend that Judge Weinstein enter an attorneys' fee judgment in the amount of $8,489.96 in favor of MLLG and against defendants, jointly and severally.

## CONCLUSION

For the foregoing reasons, the Court grants MLLG's motion to withdraw and recommends Judge Weinstein enter an attorneys' fees judgment totaling $8,489.96 in favor of MLLG and against defendants, J & R and Alokasheh, jointly and severally.

---

[3] This amount reflects a twenty percent reduction from MLLG's request of $10,612.44. MLLG submitted a billing record dated January 16, 2013 reflecting additional time and fees that were not included in its initial request. I decline to award MLLG any compensation for this additional time. At no point has MLLG revised its request to include this additional amount. Moreover, the billing record includes the time MLLG spent on the instant motion and fee application, in which, as noted above, MLLG inexcusably made the same error it previously made in a nearly identical motion before Magistrate Judge Mann. Lastly, the Agreement is silent as to fees MLLG may incur in moving to withdraw as counsel and in collecting any outstanding fee. Accordingly, the Court has excluded this additional time and calculated MLLG's fee award based on MLLG's initial request. See Harris, 2012 WL 3956801, at *8 (reducing fees in part because documents in connection with inquest were mediocre, contained numerous errors, and counsel failed to cite authority for much of relief requested); cf. Cutner, 1998 WL 104612, at *3 (awarding fees incurred in collecting fee, but declining to award fees incurred in moving to withdraw where retainer agreement was silent as to the latter); Shukla v. Sharma, No. 07–CV–2972, 2013 WL 66148, at *3 (E.D.N.Y. Jan. 4, 2013) (awarding fees associated with litigating fee dispute where retainer agreement expressly provided for such recovery).

J & R is directed to retain new counsel, and said counsel shall file a notice of appearance by June 21, 2013. If J & R fails to retain counsel within this time, the Court will permit plaintiff to seek a default judgment against J & R. In the event that individual defendant Alokasheh is unable to retain new counsel, he must appear at any subsequent conferences pro se.

A status conference is hereby scheduled on June 25, 2013 at 1:00 P.M. in Courtroom 6E, 225 Cadman Plaza East. Any request for an adjournment must be made in the form of a letter motion filed on ECF at least forty-eight hours before the scheduled conference and must indicate which parties consent to the adjournment.

MLLG is ordered to serve a copy of this Order/Report and Recommendation on Alokasheh and J & R, and to promptly file proof of service on ECF. Any objections to my recommendation for an entry of an attorneys' fees judgment must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.

Dated: May 20, 2013
Brooklyn, New York

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE